US Bankruptcy Court
Southern District of Mississippi
FILED

SEP 1 6 2026

Danny L. Miller, Clerk of Court
By: ______________, Deputy Clerk

**UNITED STATES BANKRUPTCY COURT**

**FOR THE SOTHERN DISTRICT OF MISSISSIPPI**

**GULFPORT DIVISION**

In re: **MISTY TATIANA EATON**, Debtor.
Case No.: **26-50792-KMS**
Chapter: **13**

# MOTION FOR RELIEF FROM AUTOMATIC STAY AND FOR LEAVE TO PROCEED WITH EVICTION (REAL PROPERTY)

**LARRY CURTIS AND JOSEPHINE CURTIS** ("Movant"), by and through its self-represented capacity, respectfully moves this Court for an Order granting relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) and § 362(d)(2), allowing Movant to proceed with eviction proceedings under state law regarding the residential real property located at **16 WOODSIDE, HATTIESBURG, MISSISSIPPI 39402**. In support of this Motion, Movant respectfully states as follows:

## Jurisdiction and Venue

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

2. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background Facts

3. Movant is the owner and landlord of the residential real property located at: **16 WOODSIDE, HATTIESBURG, MISSISSIPPI 39402** (the "Property").

4. The Debtor occupies the Property pursuant to a residential lease agreement executed on **APRIL 16TH 2026**. A true and correct copy of the lease agreement is attached hereto as **Exhibit A.**

5. Under the terms of the lease, the Debtor is required to pay monthly rent in the amount of **$2,000.00** due on the **1st** day of each month.

6. The Debtor filed a voluntary petition under Chapter **13** of the Bankruptcy Code on **MAY 13TH 2026** (the "Petition Date").

7. The automatic stay under 11 U.S.C. § 362(a) went into effect upon the filing of the petition, preventing Movant from pursuing state-law remedies to recover possession of the Property.

## Grounds for Relief from the Automatic Stay

8. The Debtor failed to acknowledge that she was a renter on the Official Form 101, Chapter 13 filing, Part 2, item 11: Do you rent your residence? The Debtor's answer was No. Due to the Debtor's answer, the Movant was not notified and not included in the Chapter 13 meeting of creditors held on June 22, 2026. The Movant became aware of the Chapter 13 filing on or about early September 2026 through a search of public records. Knowledge of the filing caused the Movant to slow efforts for relief through state courts and has complicated the collection and eviction effort.

9. Prior to the Petition Date, the Debtor failed to make required security deposit and rent payments for the month of May 2026. (The security deposit and first month's rent was paid by checks from the Debtor to the Movant that were returned for insufficient funds. The Debtor has been notified via the required 15-day notice and to date the checks have not been made good). The pre-petition delinquency totals **$3,915.00 PLUS $50.00 (RETURNED CHECK FEE) and $100.00 (late fee) TOTAL: $4,065.00.** Copies of the checks and 15-day notices are attached as **Exhibit B.**

10. Since the Petition Date, the Debtor has failed to make post-petition rent payments as they became due for the months of August and September 2026. The post-petition delinquency totals **$4,276.00 ($2,000.00 RENT, PLUS $38.00 UTILITY CHARGE, PLUS $100.00 LATE CHARGE PER MONTH).**

11. Cause exists to lift the automatic stay under 11 U.S.C. § 362(d)(1) for a lack of "adequate protection" of Movant's interest in the Property. The Debtor continues to occupy the premises without paying for its use, causing ongoing economic harm to Movant.

12. Alternatively, relief should be granted under 11 U.S.C. § 362(d)(2) because the Debtor does not have equity in the Property (the leasehold interest holds no equity), and the Property is not necessary for an effective reorganization (especially true in Chapter 7 liquidation cases).

**Relief Requested**

12. Movant requests that the automatic stay be terminated to permit Movant to take any and all steps necessary under applicable state law to evict the Debtor, regain physical possession of the Property, and obtain a money judgment for unpaid rent.

13. Movant further requests that the 14-day stay of execution under Federal Rule of Bankruptcy Procedure 4001(a)(3) be waived so that Movant may proceed with state law remedies immediately upon entry of the Order.

**WHEREFORE**, Movant respectfully requests that this Court enter an Order:

- Granting this Motion and terminating the automatic stay provisions of 11 U.S.C. § 362(a) to allow Movant to pursue eviction and possessory remedies in state court;
- Waiving the 14-day stay of execution under FRBP 4001(a)(3); and
- Granting such other and further relief as this Court deems just and proper.

Dated: September 14, 2026

Respectfully submitted,

**Larry Curtis**, Movant pro se
**1005 N 2nd Ave, Laurel, MS 39440**
**916-652-6568**
**Email: lgcurtis@gmail.com**

**Josephine Curtis**, Movant pro se
**1005 N 2nd Ave, Laurel, MS 39440**
**916-652-6568**
**Email: jocurtis44@hotmail.com**

---

# EXHIBIT A

# 16 WOODSIDE LEASE

MISSISSIPPI REALTORS

# Residential Lease Agreement

This form is provided as a courtesy to the parties only. It is not required to be used in this transaction and may not fit the needs, goals and purposes of the parties. The Mississippi Association of REALTORS® makes no statement or warranty as to this form, its contents or use, and the parties, by their use of this form, acknowledge said facts and agree that neither the Mississippi Association of REALTORS® nor any member thereof shall be liable to any party or person for its contents or use. If any party to this transaction does not fully understand it, or has any question, the party should seek advice from a competent legal professional before signing.

**THIS AGREEMENT**, entered into and effective this the 16th day of April 2026 ______________, by and between the undersigned Lessor, and the following party(ies), herein called Lessee(s): Misty Eaton - Hunter and Melvin Hunter ______________ (this "Lease"), and in consideration of the covenants herein contained on the part of the said Lessee to be kept and performed, Lessor does hereby lease to Lessee the premises situated at: 16, Woodside, Hattiesburg, MS 39402 in the City of ______________, County of Lamar, State of Mississippi ("Premises") to be used and occupied by Lessee and the following occupants only: Above mentioned lessees and their two sons as a private residence and for no other purpose. "Premises" includes the dwelling unit and the structure of which it is a part, facilities and appurtenances therein, and grounds, areas and facilities held out for use of tenants generally or whose use is promised to Lessee hereunder.

1. **TERM.** The term hereof shall begin on May 1 2026, ______, and continue [CHECK ONE]:

☒ until June 30 2028

☐ on a week-to-week basis thereafter, until either party shall terminate this Lease by giving the other party Notice as set forth in section 14 of this Lease.

☐ on a month-to-month basis thereafter, until either party shall terminate this Lease by giving the other party Notice as set forth in section 14 of this Lease.

2. **RENT.** [CHECK ONE]:

☐ Flat Fee Rent of $ ______________ payable on ______________.

☐ Annual Rent of $ ______________ payable in equal monthly installments of $ ______________, due on or before the first day of each month for which payment is made.

☐ Weekly Rent of $ ______________ due on or before the Monday of each week for which payment is made.

☒ Monthly Rent of $ 2,000 00/100 due on or before the first day of each month for which payment is made.

In the event rent is not paid within 7 days after due date, Lessee agrees to pay a late charge of $ 100 00/100 or ______________ % of the monthly rental rate. Lessee further agrees to pay $ 25 00/100 for each dishonored check in addition to all costs of collection, including fees, court costs and reasonable attorney fees. Late charges shall constitute additional Rent and shall be collectible in accordance with applicable law.

3. **SECURITY DEPOSIT.** A security deposit of $ 2,000 00/100 shall be deposited with Owner (Lessor) please see also inital deposit (~~"Broker"~~) upon execution of this Lease to secure performance of this Lease by Lessee. Security Deposit shall be held by Broker in good faith pursuant to the terms of this Lease and applicable law. Lessor, by written notice delivered to Lessee, may claim of such Security Deposit such amounts as are reasonably necessary to remedy Lessee's default in the payment of Rent, to repair damages to the Premises caused by Lessee (exclusive of ordinary wear and tear), to clean the Premises upon termination of the tenancy, or for other reasonable and necessary expenses incurred as the result of Lessee's default. After payment of any such amounts, any remaining portion of the Security Deposit shall be



Copyright ©2024 by Mississippi Association of REALTORS®
F3 - Residential Lease Agreement

refunded to Lessee, with a written accounting for those amounts deducted, no later than forty-five (45) days after the termination of the tenancy, the delivery of possession and demand by Lessee there-for.

4. **PETS.** Pets [CHECK ONE] ☐ are ☒ are not allowed on Premises. No pets shall be placed upon Premises without prior written permission from Lessor. For each pet approved by Lessor, a pet deposit of $ ____________ shall be deposited with ________________________________________ and [CHECK ONE] ☐ shall ☐ shall not be refundable at termination of Lease. Lessee is liable to Lessor for any damage caused to Premises or Lessor's property by any pet or animal Lessee or Lessee's invitee brings upon the Premises or Lessor's property.

5. **UTILITIES.** [CHECK ONE]:

☒ Lessee shall be responsible for all utilities, including connections, deposits and payments.

☐ Lessee shall be responsible for utilities, including connections, deposits and payments, <u>except</u> [INSERT IF ANY] ________________________________________________________, which shall be provided by Lessor.

NOTE: In the event Premises is serviced by gas, Lessee shall be responsible for keeping gas service on for full term of Lease; Lessee shall pay for any pressure testing made necessary by Lessee's failure to maintain continuous gas service during term of Lease.

6. **CONDITION OF PROPERTY.** Lessee stipulates that it has examined the Premises, including the grounds and all improvements, and that they are, at the time of this Lease, in good order, repair and in safe, clean and tenantable condition. Taking possession of the Premises by Lessee shall be conclusive evidence that it received Premises in good condition and without objection or reservation. Lessee shall specifically perform those duties of tenants as specified in Miss. Code Ann., Sec. 89-8-25, as amended, and shall obey and conform to all written or posted rules and regulations applicable to the Premises, common areas and Lessor's property including, if applicable, any apartment owners association or cooperative housing corporation bylaws.

7. **SURRENDER.** At the expiration or sooner termination of this Lease, Lessee shall at once peacefully surrender Premises in as good a state and condition as they were in at the commencement of this Lease, reasonable wear excepted. Upon vacating Premises, Lessee will leave same in clean and rentable condition (except for reasonable wear). For purposes of this clause, "reasonable wear" is as determined by Lessor, in its discretion.

8. **ALTERATION AND IMPROVEMENTS.** Lessee agrees to make no addition, alteration or improvement, including painting, to the premises without the prior written consent of Lessor. All additions, alterations and improvements shall be the property of the Lessor (with the exception of fixtures installed by Lessee with Lessor's permission that are removable without damage to the premises and moveable personal property), and Lessee shall not be entitled to compensation therefor, nor shall Lessee remove them from the premises without the written consent of the Lessor. If Lessee makes any addition, alteration or improvement, including painting, to the premises without the written consent of Lessor, the Lessor may, at its option, require Lessee to restore the premises to their former condition at Lessee's expense. If Lessee fails or refuses to make such restoration within the time specified in written notice from Lessor to do so (if no time specified, then within a reasonable time), Lessor may restore the premises and Lessee shall be deemed to be in default hereof and responsible for the total cost thereof; in such event, all costs thereof shall be deemed additional Rent immediately due and payable by Lessee under the Lease.

9. **DAMAGE TO PREMISES.** Lessor shall not be liable for any damages or injury to Lessee, or any other person, or to any property on the Premises or any part thereof or in common areas thereof, unless such damages or costs are the proximate result of the willful misconduct of Lessor, its agents or employees. Lessee agrees to hold Lessor harmless from any claims for damages, no matter how caused, except for injury or damages for which Lessor is legally responsible.

Copyright ©2024 by Mississippi Association of REALTORS®
F3 - Residential Lease Agreement

10. **INDEMNIFICATION.** Lessee hereby covenants and agrees to save, indemnify and hold Lessor and its insurers, agents and employees harmless in the event of any accident, burglary, robbery, fire, wind, rain, occurrence or other causes of injury or other loss whatsoever to Lessee, Lessee's family, co-occupants, employees, invitees or guests or anyone else for injury, damage or loss of any nature which may occur at any time on account of any defect in the leased Premises, the improvements therein and the appurtenances thereto, whether such exists at this time or arises subsequent hereto and whether such defect was known or unknown at the time, excepting only any loss which is the proximate result of the willful misconduct of Lessor, its agents or employees. Lessor, his insurers, agents or employees shall not be liable for any injuries or damages to person or property sustained by Lessee, Lessee's family, co-occupants, guests, friends, servants or any other person upon the premises or any damage to any other person or property upon the premises, excepting only any injury or loss which is the proximate result of the willful misconduct of Lessor, its agents or employees.

11. **RIGHT TO ENTER, INSPECT, REPAIR, ADVERTISE AND SHOW PREMISES.** Lessor or its agent(s) shall have the right at all reasonable times to enter the Premises to inspect same, make repairs or show the Premises to prospective buyers or lessees. Premises shall be shown by appointment only, with twenty-four (24) hours notice to Lessee. Lessee shall cooperate in arranging said appointments and showings. Lessor shall have the right to advertise the Premises at any time for sale or lease upon determining that the Premises is to be re-let or sold.

12. **REPAIRS.** Lessor shall have no duty whatsoever in connection with any defect which is caused by the deliberate or negligent act of Lessee or persons on the Premises with Lessee's permission. Lessee shall be responsible for the first $ ____________________ of all repairs to Premises, with full discretion as to nature and manner of repairs reserved to Lessor in its sole discretion. In the event of a material defect which constitutes a breach of the terms of this Lease or those obligations of Lessor under Miss. Code Ann., Sec. 89-8-23, as amended, Lessee must provide written notice to Lessor of the specific and material defect, after receipt of which Lessor shall have thirty (30) days to repair such defect. If, within said thirty (30) days, Lessor fails to repair such defect, Lessee:
(a) May repair such defect himself; and
(b) Shall be entitled to reimbursement of the expenses of such repairs (not to exceed an amount greater than the usual and customary charge for such repairs), provided that (i) Lessee has fulfilled Lessee's affirmative obligations under Miss. Code Ann., Sec. 89-8-25, as amended; (ii) the expenses incurred in making such repairs do not exceed an amount equal to one (1) month's Rent; (iii) Lessee has not exercised the remedy provided in this section in the six (6) months immediately preceding such repair; and (iv) Lessee is current in Lessee's rental payment. Cost of repairs reimbursable under this section may be offset against future Rent. Notwithstanding anything in this section, Lessor may, in good faith, at any time after the expiration of this Lease, recover possession of the dwelling unit, cause Lessee to quit the dwelling unit involuntarily, demand an increase in rent or decrease the services to which Lessee has been entitled, in accordance with applicable law.

13. [CHECK IF APPLICABLE] ☒ APPLICABLE ☐ NOT APPLICABLE
**NO SMOKING PROPERTY.** If applicable, the Premises and the entirety of Lessor's property including, but not limited to, all outdoor spaces surrounding the Premises, are, without exception, exclusively a NO SMOKING PROPERTY. Neither Lessee(s) nor Lessee's invitees or guests, nor any other person, shall be permitted to smoke within or upon the Premises or anywhere upon Lessor's property. Lessee(s) agree(s) to refrain from, and to prohibit, use of tobacco products, electronic cigarettes, personal vaporizers or electronic nicotine delivery systems of any kind, as well as medical marijuana, within or upon the Premises. Any violation shall be deemed a material breach of this Lease. Lessee(s) understand(s) that smoke or vapor from any prohibited substance will be considered as causing damage to the Premises, for which Lessee(s) shall be liable to Lessor or otherwise subject to legal and equitable remedies available to Lessor.

14. **NO ASSIGNMENT OR SUBLEASE BY TENANT.** Tenant shall not assign this Lease or sublet Premises. Any assignment or subletting by Tenant shall be null and void, and shall constitute Breach of the Lease by Tenant.

15. **ABANDONMENT.** Landlord reserves the right to terminate tenancy in accordance with this Section 14. If the Premises becomes vacant or abandoned, Lessee shall be in default and this lease shall expire and terminate. In such event, Lessor may re-enter and take possession of the Premises in any manner provided by law including, but not limited to, summary remedies. In case Lessor shall recover possession of Premises, it may, but shall not be required to, remove property of the Lessee and store same, or it may dispose of abandoned property as provided by law. Notwithstanding anything stated herein, Lessee agrees that whether possession is taken or this lease is cancelled by Lessor, the entire unpaid balance of Rent shall accelerate and immediately become due and payable and Lessee shall be responsible for all costs incurred by Lessor in enforcement of this paragraph, including court costs and attorney fees.

16. **TERMINATION.** Absent a material noncompliance or substantial violation of the Lease materially affecting health and safety, written Notice to terminate tenancy shall be given by Lessor to Lessee at lease seven (7) days prior to the termination date for a week-to-week tenancy and at least thirty (30) days prior to the termination date for a month-to-month or annual tenancy. If there is a material noncompliance by Lessee with this Lease by the non-payment of Rent, Lessor may terminate this Lease and seek removal of Lessee from the Premises in the manner and with the Notice prescribed by Chapter 7, Title 89, Mississippi Code of 1972. If there is a material noncompliance by Lessee with this Lease (other than the non-payment of Rent) or those obligations imposed upon Lessee by Miss. Code Ann., Sec. 89-8-25, as amended, Lessor may terminate the tenancy as set forth in this paragraph. If there is a material noncompliance by Lessor with this Lease or those obligations imposed upon Lessor by Miss. Code Ann., Sec. 89-8-23, as amended, Lessee may terminate the tenancy as set forth in this paragraph. In the event of a material noncompliance with this Lease or the breaching party's obligations to the other under law, the non-breaching party may deliver a written notice to the breaching party specifying the acts and omissions constituting the breach and that the Lease will terminate upon a date no less than fourteen (14) days after receipt of the notice if the breach is not remedied within a reasonable time not in excess of fourteen (14) days; and the Lease shall terminate and the Lessee shall surrender possession as provided in the Notice subject to the following:

(a) If the breach is remediable by repairs, the payment of damages, or otherwise, and the breaching party adequately remedies the breach prior to the date specified in the notice, the Lease shall not terminate;

(b) In the absence of a showing of due care by the breaching party, if substantially the same act or omission which constituted a prior noncompliance of which Notice was given recurs within six (6) months, the non-breaching party may terminate the Lease upon not less than fourteen (14) days' written notice specifying the breach and the date of termination of the Lease.

(c) Neither party may terminate for a condition caused by its own deliberate or negligent act or omission or that of a member of its family or other person on the Premises with its consent.

Notice to terminate tenancy shall not be required to be given when Lessor or Lessee has committed a substantial violation of this Lease or applicable law that materially affects health and safety.

If the Lease agreement is terminated in accordance with this section, Lessor shall return all prepaid and unearned Rent as set forth in section 2 of this Lease and any Security Deposit recoverable by Lessee as set forth in section 3 of this Lease.

17. **DEFAULT.** If Lessee fails to pay Rent or any other charges required to be paid by Lessee in full when due, or if Lessee shall breach any of the terms of this Lease, Lessor shall have such rights as are provided by law. In the event of a default by Lessee, Lessee's Security Deposit, if any, shall be handled in accordance with section 3 of this Lease. The retention of the Security Deposit, or any portion thereof, shall not be the only remedy to which Lessor is entitled but Lessor shall have all recourse against Lessee provided by this Lease and by law including, but not limited to, summary remedies, and all remedies shall be cumulative and non-exclusive. Lessee agrees to pay Lessor's reasonable attorney fees and expenses incurred in and about enforcing any of the terms of this Lease, in collecting past due rent, and in recovering possession from Lessee, should the service of an attorney be retained by Lessor in so doing.



Copyright ©2024 by Mississippi Association of REALTORS®

18. **NOTICES.** For purposes of giving any Notice required under this Lease or pursuant to law, Notice to Lessor shall be delivered personally to Lessor, with acknowledgment of receipt, or mailed by certified mail, return receipt requested, to Landlord (or Landlord's lawful agent) at the following street address:
1005 N 2nd AVE, LAUREL MS 39440
______________________________________________________________________.

Lessor may contract with an agent or agents to assume all the rights and duties of Lessor under this Lease and under applicable law. In the event Lessor has duly designated an authorized agent to act in the stead of Lessor, Notice to such agent of Lessor in the form specified above is equivalent to giving Notice to Lessor.

Notices to Lessee shall be delivered personally to Lessee, with acknowledgment of receipt, or mailed by certified mail to Lessee at Lessee's mailing address for the Premises or, if Landlord ascertains that Lessee has apparently vacated the Premises, to Lessee at any alternative address provided in writing by Lessee to Lessor for such purpose. If Lessee's tenancy has not terminated under this Lease and Lessee cannot be found personally to achieve personal delivery of any Notice after reasonable effort, and Lessee has not provided to Lessor a valid alternative address for Notice, Lessor's Notice hereunder shall be deemed given to and received by Lessee when Lessor posts such notice on the door of Lessee's Premises.

The foregoing notwithstanding, Lessee specifically consents to Notice of Breach, Notice of Default or Notice of Termination by use of email to Tenant at the following email address: ______________________________ ______________________________, or by text message to the following number: ______________________. Delivery shall be deemed complete upon the sending of email or text to the Tenant as provided in this paragraph.

19. **NO WAIVER.** The failure of Lessor to insist upon the strict performance of the terms, covenants, agreements and conditions herein contained, or any of them, shall not constitute or be construed as a waiver or relinquishment of Lessor's rights including, but not limited to, Lessor's right to enforce any such term, covenant, agreement or condition, but the same shall continue in full force and effect.

20. **GOVERNING LAW; SEVERABILITY.** The laws of the State of Mississippi shall govern the interpretation, validity, performance and enforcement of this Lease. If any provision of this Lease should be held invalid or unenforceable, the validity and enforceability of the remaining provisions of this Lease shall not be affected thereby.

21. **TIME OF THE ESSENCE.** Time is of the essence as to all dates, times and deadlines stated herein, unless otherwise noted.

22. **EQUAL HOUSING OPPORTUNITY.** In accordance with the federal Fair Housing Law, it is illegal to block bust or to discriminate against any person because of race, color, religion, sex, handicap, familial status or national origin in the sale or rental of housing or residential lots, in advertising the sale or rental of housing, in the financing of housing or in the providing of real estate brokerage services.

23. **LEAD-BASED PAINT DISCLOSURE.** Residential dwellings **built prior to 1978** may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. Lessors of residential property built prior to 1978 are required to provide lessees thereof with any information on lead-based paint hazards from risk assessments or inspections in lessor's possession and notify the lessee of known lead-based paint or any known lead-based paint hazards in the Premises. Lessors must provide lessees with a federally approved pamphlet on lead poisoning prevention. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to rental.


Copyright ©2024 by Mississippi Association of REALTORS®
F3 - Residential Lease Agreement

24. **DUTY TO SUPPLEMENT APPLICATION AND NOTIFY OF CHANGE IN EMPLOYMENT STATUS.** Lessee acknowledges and verifies to Lessor that the information in the Application submitted by Lessee to Landlord is true and correct, and that Lessor is relying upon said information and its validity in making this Lease. Failure of Lessee to provide true and correct information in the Application shall constitute a breach of this Lease. During the Term of this Lease, Lessee shall have a continuing obligation to supplement the Application as to any information that may change and to notify Lessor of any change in Lessee's employment status within five (5) business days of any change of employment. Failure to supplement the Application or timely notify Lessor of any change of employment shall constitute a breach of this Lease.

25. **BROKERS AND SALESPERSONS; AGENCY RELATIONSHIP.**
(A) The Brokers and Salespersons involved in the transaction associated with this Lease are as follows:
Listing Agency ______ Listing Agent ______
Business Phone ______ Business Phone ______
Leasing Agency ______ Leasing Agent ______
Business Phone ______ Business Phone ______

(B) [CHECK ONE]: N/A

☐ The Listing Firm, the Leasing Firm, and their salespersons represent the Lessor as their Client and the Lessee is unrepresented. The Lessee(s) is/are a customer.

☐ The Listing Firm and its salespersons represent the Lessor(s). The Leasing Firm and its salespersons represent the Lessee(s).

☐ The Listing Firm and its salespersons represent both Lessor(s) and the Lessee(s) as dual agents by mutual agreement and all parties have signed and understand the Dual Agency Confirmation form provided to them by the Listing Firm.

☐ The Leasing Firm and its salespersons represent the Lessee(s) and the Lessor is unrepresented. The Lessor(s) is/are a customer.

26. **SPECIAL PROVISIONS.** **(If none, write "NONE" below):**

SEE ATTACHED ADDENDUM ONE



Copyright ©2024 by Mississippi Association of REALTORS®

**ADDENDUM ONE TO THE LEASE AGREEMENT, 16 Woodside, Hattiesburg, 39402**

Addendum one to the lease agreement for 16 Woodside, Hattiesburg, MS 39402 between Josephine and Larry Curtis, Lessors, and Misty Eaton-Hunter and Melvin Hunter, Lessees, dated: ____________

1. Lessees acknowledge receipt of the Clear Creek HOA Rules and agree to abide by these.
2. Lessees will maintain all landscaping.
3. A $100 deposit due upon acceptance by both parties of the terms for this lease due is in cash or cashier's check which is non-refundable if lessees fail to pay first month's rent and increase the deposit to a total of $2000 by April 27,2006 when possession of the premises will be given to the lessees.
4. All further rent payments to be deposited into lessors' Bank of America checking account by the first day of each month. Account information to be provided to lessees prior to 1st June 2026.
5. Lessees acknowledge that the premises have not been rekeyed nor code on garage door opener have been changed since the lessors' purchase on April 10, 2026. Lessees may rekey in a professional manner provided they also provide lessors with functioning keys within 5 days of rekeying.
6. Lessees acknowledge that lessors' insurance does not cover lessees' personal possessions nor their liability. It is recommended that lessees obtain their own insurance.
7. RE188-190 lines of the contract, lessees to provide an email address.

Lessee: [signature] Date: 4/18/26

Lessee: [signature] Date: 18 April 26

Lessor: [signature] Date: 4/19/26

Lessor: [signature] Date 4/19/26

# EXHIBIT B

# CHECKS – 15 DAY NOTICE

Larry Curtis

1005 N. 2nd Ave.

Laural, MS 39440

July 20, 2026

Dear Misty Eaton;

This statutory notice is provided pursuant to -section 97-19-57 Mississippi code of 1972. You are hereby notified that a check, draft, or order numbered apparently issued by you on April 29, 2026 (check #2205, Deposit), has been dishonored. Pursuant to Mississippi law, you have fifteen (15) days from receipt of this notice to tender payment of the full amount of such check, draft, or order, plus a service charge of $40.00, the total amount due being $2,040.00. Unless this amount is paid in full within the time specified above, the holder may assume that you delivered the instrument with intent to defraud and may turn over dishonored instrument and all other information relating to the incident to the proper authorities for criminal prosecution.

Yours truly,

Larry Curtis

9589 0710 5270 3799 5602 57

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Hattiesburg, MS 39402

| | | |
|---|---|---|
| Certified Mail Fee | $ $5.55 | 0440 22 |
| Extra Services & Fees (check box, add fee as appropriate) | $0.00 | |
| ☐ Return Receipt (hardcopy) | $ $0.00 | |
| ☐ Return Receipt (electronic) | $ $0.00 | Postmark Here |
| ☐ Certified Mail Restricted Delivery | $ $0.00 | |
| ☐ Adult Signature Required | $ $0.00 | |
| ☐ Adult Signature Restricted Delivery | $ | |
| Postage | $ $0.82 | |
| Total Postage and Fees | $ $6.37 | 07/20/2026 |

Sent To MISTY EATON

Street and Apt. No., or PO Box No. 16 WOODSIDE

City, State, ZIP+4® HATTIESBURG, MS 39402

PS Form 3800, January 2023 PSN 7530-02-000-9047 See Reverse for Instructions

WARNING: THIS DOCUMENT HAS SECURITY FEATURES IN THE PAPER

Misty Eaton
1210 Estelle Street
Hattiesburg MS 39402

2205

85-543

DATE April 29, 2026

PAY TO THE ORDER OF LARRY CURTIS $ 2000.00

Two thousand and no/100 DOLLARS

PNC

MEMO Deposit

⑆071921891⑆ 4705674134⑈ 2205

Larry Curtis

1005 N. 2nd Ave.

Laural, MS 39440

July 20, 2026

Dear Misty Eaton;

This statutory notice is provided pursuant to -section 97-19-57 Mississippi code of 1972. You are hereby notified that a check, draft, or order numbered apparently issued by you on April 29, 2026 (check #2206, May Rent), has been dishonored. Pursuant to Mississippi law, you have fifteen (15) days from receipt of this notice to tender payment of the full amount of such check, draft, or order, plus a service charge of $40.00, the total amount due being $1,955.00. Unless this amount is paid in full within the time specified above, the holder may assume that you delivered the instrument with intent to defraud and may turn over dishonored instrument and all other information relating to the incident to the proper authorities for criminal prosecution.

Yours truly,

Larry Curtis

Larry Curtis

9589 0710 5270 3799 5602 64

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

Hattiesburg, MS 39402

OFFICIAL USE

| | | |
|---|---|---|
| Certified Mail Fee | $ 5.55 | 0440 |
| | $0.00 | 22 |
| Extra Services & Fees *(check box, add fee as appropriate)* | | |
| ☐ Return Receipt (hardcopy) | $ 0.00 | |
| ☐ Return Receipt (electronic) | $ 0.00 | Postmark Here |
| ☐ Certified Mail Restricted Delivery | $ 0.00 | |
| ☐ Adult Signature Required | $ 0.00 | |
| ☐ Adult Signature Restricted Delivery | $ | |
| Postage | $ 0.82 | |
| Total Postage and Fees | $ 6.37 | 07/20/2026 |

*Sent To* MISTY EATON

*Street and Apt. No., or PO Box No.* 16 WOODSIDE

*City, State, ZIP+4®* HATTIESBURG, MS 39402

PS Form 3800, January 2023 PSN 7530-02-000-9047 See Reverse for Instructions

WARNING: THIS DOCUMENT HAS SECURITY FEATURES IN THE PAPER

Misty Eaton
1210 Estelle Street
Hattiesburg MS 39402

2206

85-543

DATE April 29, 2026

PAY TO THE ORDER OF Larry Curtis $1,915.42

One thousand nine hundred fifteen 42 DOLLARS

PNC

MEMO May rent

⑆071921891⑆ 4705674134⑈ 2206

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**GULFPORT DIVISION**

In re:
Misty Tatiana Eaton
Debtor

Case No.: 26-50792-KMS
Chapter: 13

---

**CERTIFICATE OF SERVICE**

I, Larry Curtis hereby certify that on this 16th day of September, 2026, a true and correct copy of the foregoing *Motion for Relief from Automatic Stay and Proposed Order* was served upon the following parties in interest via First Class United States Mail, postage prepaid to the addresses listed below:

1. **Debtor(s):**
   Misty Tatiana Eaton
   16 Woodside
   Hattiesburg, MS 39402
2. **Attorney for the Debtor:**
   Thomas Carl Rollins Jr
   The Rollins Law Firm, PLLC
   PO BOX 13767
   Jackson, MS 39403
3. **Bankruptcy Trustee:**
   David Rawlings
   David Rawlins, Chapter 13 Trustee
   P.O. Box 566
   Hattiesburg, MS 39403

Dated: 16 September 2026.

Respectfully submitted,

Larry Curtis

1005 N 2nd Ave
Laurel, MS 39440
916-652-6568
lgcurtis@gmail.com